# EXHIBIT A

## SUMMONS

| | |
|---|---|
| Attorney(s) KENNDY LILLIS SCHMIDT & ENGLISH | **Superior Court of New Jersey** |
| Office Address 75 Maiden Lane, Suite 402 | |
| Town, State, Zip Code New York, New York 10038-4816 | Hudson County |
| | Law Division |
| Telephone Number (212) 430-0800 | |
| Attorney(s) for Plaintiff Travelers Property Casualty, et al. | Docket No: HUD-L-004552-20 |
| Travelers Property Casualty Company | |
| of America; Lloyd's Syndicate, et al. | |
| Plaintiff(s) | **CIVIL ACTION SUMMONS** |
| vs. | |
| The United Kingdom Mutual Steam | |
| Ship Assurance Association (Europe) | |
| Defendant(s) | |

From The State of New Jersey To The Defendant(s) Named Above:

   The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

   If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

   If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

                                                                s/ Michelle M. Smith
                                                                Clerk of the Superior Court

DATED: 12/10/2020

Name of Defendant to Be Served: The United Kingdom Mutual Steam Ship Assurance Association

Address of Defendant to Be Served: c/o Thomas Miller (Americas) Inc., 185 Hudson St., Ste. 2710, Jersey City, NJ

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: HUDSON COUNTY

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; LLOYD'S SYNDICATE 2003 FOR THE 2017 YOA, CATLIN SYNDICATE LIMITED; SWISS RE INTERNATIONAL SE – UK BRANCH; STARR INDEMNITY & LIABILITY COMPANY, INC.; ATLANTIC SPECIALTY INSURANCE CO.; AMTRUST LLOYD'S SYNDICATE 9577; THE CONTINENTAL INSURANCE COMPANY; NAVIGATORS INSURANCE COMPANY; RIVERSTONE SYNDICATE 1897; XL SPECIALTY INSURANCE COMPANY; AND UNITED STATES FIRE INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>- v. -<br><br>THE UNITED KINGDOM MUTUAL STEAM SHIP ASSURANCE ASSOCIATION (EUROPE) LIMITED,<br><br>Defendant. | 20 Civ. (    )<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Travelers Property Casualty Company of America, Lloyd's Syndicate 2003 for the 2017 YOA; Catlin Syndicate Limited; Swiss Re International SE – UK Branch; Starr Indemnity & Liability Company, Inc.; Atlantic Specialty Insurance Co.; Amtrust Lloyd's Syndicate 9577; The Continental Insurance Company; Navigators Insurance Company; RiverStone Syndicate 1897; XL Specialty Insurance Company; and United States Fire Insurance Company (collectively "Plaintiffs" and/or "Hull Underwriters"), by and through their attorneys, Kennedy Lillis Schmidt & English, allege upon information and belief as follows:

INTRODUCTION

1.  This is an action for (i) equitable contribution arising out of payments made by Hull Underwriters for common tank-cleaning and incidental charges ("Common

Page **1** of **16**

Charges") incurred as a result of a 20 October 2017 explosion and fire ("Incident") aboard Barge No. 255 ("Barge") owned and operated by Bouchard Transportation Co., Inc. ("Bouchard"), an entity that was insured by both Hull Underwriters and The United Kingdom Mutual Steam Ship Assurance Association (Europe) Limited ("U.K. Mutual"); and (ii) declaratory judgment of establishing the respective *pro rata* obligations of Hull Underwriters and U.K. Mutual for the Common Charges.

2. The Incident is detailed in Paragraphs 54 through 84 *infra*.

3. The post-Incident Common Charges are detailed in Paragraphs 85 through 90 *infra*.

## PARTIES

### *The Hull Policy*

4. Plaintiffs bring this action for equitable contribution and declaratory judgment pursuant to their respective rights as independent insurers subscribing to Hull Insurance Policy Number JLT-57060, London Market Reference B0901LH1723775000, for a term from 10 June 2017 to 10 June 2018 issued to Bouchard ("Hull Policy").

5. The Hull Policy provided insurance coverage for, *inter alia*, Hull and Machinery-related risks ("Hull Risk") for certain vessels owned and operated by Bouchard, including the Barge.

### *Plaintiffs*

6. Travelers Property Casualty Company of America ("Travelers") was and is a Connecticut corporation with an office located at 1 Town Square, Hartford, Connecticut 06183.

7. Travelers was and is the lead underwriter on the Policy.

8. Travelers insured 15% of the Hull Risk underwritten by the Policy.

9. Travelers contributed $212,990.94 toward the Common Charges.

10. Lloyd's Syndicate 2003 for the 2017 YOA, Catlin Syndicate Limited ("Catlin") was and is a corporation organized and existing under the laws of Bermuda with an office located at 20 Gracechurch Street, London, United Kingdom EC3V 0BG.

11. Catlin insured 13.6842% of the Hull Risk underwritten by the Policy.

12. Catlin paid $194,307.38 toward the Common Charges.

13. Swiss Re International SE – UK Branch ("Swiss Re") was and is a corporation organized and existing under the laws of Luxembourg with an office located at 30 St. Mary Axe, London, United Kingdom EC3A 8EP.

14. Swiss Re insured 10.2632% of the Hull Risk underwritten by the Policy.

15. Swiss Re paid $145,731.24 toward the Common Charges.

16. Starr Indemnity & Liability Company, Inc. ("Starr") was and is a corporation organized and existing under the laws of the State of Texas with an office located at 399 Park Avenue, 2nd Floor, New York, New York 10022.

17. Starr insured 10% of the Hull Risk underwritten by the Policy.

18. Starr paid $141,993.96 toward the Common Charges.

19. Atlantic Specialty Insurance Co., acting through its agent International Marine Underwriters ("Atlantic"), was and is a corporation organized and existing under the laws of the State of New York with an office located at 605 Highway 169 North, Suite 800, Plymouth, Minnesota 55441.

20. Atlantic insured 10% of the Hull Risk underwritten by the Policy.

21. Atlantic paid $141,993.96 toward the Common Charges.

22. AmTrust Lloyd's Syndicate 9577 ("AmTrust") was and is a corporation organized and existing under the laws of England and Wales with an office located at 1 Lime Street, London, United Kingdom ECBM 7HA.

23. AmTrust insured 8.5526% of the Hull Risk underwritten by the Policy.

24. AmTrust paid $121,441.76 toward the Common Charges.

25. The Continental Insurance Company ("Continental") was and is a corporation organized and existing under the laws of the State of Pennsylvania with an office located at 151 N. Franklin Street, Chicago, Illinois 60606.

26. Continental insured 8.5% of the Hull Risk underwritten by the Policy.

27. Continental paid $120,694.87 toward the Common Charges.

28. Navigators Insurance Company ("Navigators") was and is a corporation organized and existing under the laws of the State of New York with an office located at 1 Penn Plaza, 32nd Floor, New York, New York 10119.

29. Navigators insured 7.5% of the Hull Risk underwritten by the Policy.

30. Navigators paid $106,495.47 toward the Common Charges.

31. RiverStone Syndicate 1897 ("RiverStone") was and is a corporation organized and existing under the laws of England and Wales with an office located at Park Gate, 163 Preston Road, Brighton, East Sussex, BN1 6AU, United Kingdom.

32. Riverstone insured 7.5% of the Hull Risk underwritten by the Policy.

33. Riverstone paid $106,495.47 toward the Common Charges.

34. XL Specialty Insurance Company ("XL Specialty") was and is a corporation organized and existing under the laws of the State of Delaware with an office located at 70 Seaview Avenue, Stamford, Connecticut 06902.

35. XL Specialty insured 5% of the Hull Risk underwritten by the Policy.

36. XL Specialty paid $70,996.98 toward the Common Charges.

37. United States Fire Insurance Company through Crum & Forster Insurance ("US Fire") was and is a corporation organized existing under the laws of the State of Delaware with an office located at 305 Madison Avenue, Morristown, New Jersey 07962.

38. US Fire insured 4% of the Hull Risk underwritten by the Policy.

39. US Fire paid $56,797.58 toward the Common Charges.

*Defendant*

40. U.K. Mutual was and is a corporation duly organized and existing by virtue of the laws of Bermuda.

41. U.K. Mutual appointed as its United States Manager, Thomas Miller (Americas) Inc. ("Miller"), which has an office located at Harborside 5, 185 Hudson Street, Suite 2710, Jersey City, New Jersey 07311.

42. From the Jersey City office, Miller provides claim processing and insurance-related services to entities insured by U.K. Mutual, including Bouchard.

43. At all relevant times, U.K. Mutual provided insurance coverage to Bouchard for, *inter alia*, the risk of personal injury to and death of Bouchard crew members and other third parties ("Injury-and-Death Risk"), including those Bouchard crew members killed and injured during the Incident detailed *infra*.

44. The Hull Risk underwritten by Hull Underwriters and the Injury-and-Death Risk underwritten by U.K. Mutual are distinct and do not overlap.

## JURISDICTION AND VENUE

45. U.K. Mutual maintains an office and place of business, via Miller, at Harborside 5, 185 Hudson Street, Suite 2710, Jersey City, New Jersey.

46. U.K. Mutual has maintained that office and place of business in Hudson County, New Jersey for over thirty (30) years.

47. U.K. Mutual appointed Miller as its United States-based Manager and agent for all purposes, including all the activities associated with the UKM Policy, Bouchard, and the Incident.

48. Since 1979, Miller has been the exclusive Manager for U.K. Mutual, responsible for handling claims and providing associated insurance-related services in the United States.

49. Miller has maintained its Jersey City office for over thirty (30) years.

50. Miller provided Bouchard claims and insurance-related services, on U.K. Mutual's behalf in all matters arising from the Incident detailed *infra*.

51. This Honorable Court has personal jurisdiction over U.K. Mutual because it does business in Hudson County, New Jersey.

52. This Honorable Court also has personal jurisdiction over U.K. Mutual because that entity transacted business through its Manager, Miller, in Hudson County, New Jersey.

53. Venue is proper in Hudson County because U.K. Mutual does business generally and transacted Incident-related business specifically from the offices of Miller in Jersey City, New Jersey.

## THE INCIDENT

54. On 20 October 2017, at 04:30 local time, explosions and ensuing fire occurred on the Barge's bow while it was anchored approximately some 3.25 miles off Port Aransas, Texas.

55. Two (2) Bouchard crew members, who were on the bow of the Barge, were killed in the explosion, and various other Bouchard crew members sustained injuries.

56. At the time of the Incident, the Barge was carrying about 135,000 barrels of liquid crude oil in bulk.

57. The Incident caused significant damage to the Barge's bow.

58. Five (5) days after the Incident, the Barge was towed into the Oxy Energy dock at Ingleside, Texas, just west of Port Aransas, where the remaining cargo was transshipped to the Barge's sister-barge, *B. No. 265*.

59. The cargo-transshipment operation was completed on 31 October 2017.

60. On 1 November 2017, the Barge was moved to a repair yard owned by Gulf Copper Manufacturing Corp. ("Gulf Copper") located at Harbor Island, Port Aransas, Texas.

61. Thereafter, Gulf Copper performed tank-cleaning operations from 3 November to 3 December 2017.

62. The tank-cleaning operation included cleaning the Barge's forward tanks (port and starboard), forepeak, Nos. 1 and 2 Cargo Tanks, and Nos. 1 and 2 Ballast Tanks, all of which had been damaged extensively during the Incident.

63. The purpose of this cleaning operation was to remove all crude oil residue in order to create a safe workspace for human inspection and, thereafter, hot work (i.e., torches).

64. The National Transportation Safety Board ("NTSB") and the United States Coast Guard ("USCG") conducted a joint post-Incident investigation into the cause and origin of the Incident and the Bouchard crew member fatalities and injuries.

65. The NTSB and USCG investigation ("Investigation") determined that the Incident was caused by leaking crude oil from No. 1 Cargo Tank into the forepeak void space.

66. The Investigation discovered significant corrosion and cracks in the bulkhead separating the No. 1 Port Cargo Tank and the forepeak void space.

67. Gravity pressures created by the liquid cargo levels above the cracks and other areas of through-bulkhead corrosion permitted crude oil to seep through the openings in the bulkhead and collect inside the forepeak void space.

68. The leaking crude oil created flammable vapors which filled the forepeak space.

69. The Barge's forepeak void space was not intended or designed to hold liquid cargo, including crude oil, and contained an anchor chain locker, lighting circuits and cables, and an electrical control box for the anchor windlass ("Forepeak Machine and Electrical Equipment").

70. When activated, the Forepeak Machine and Electrical Equipment was energized and became the probable source of ignition, which caused the explosion and Incident.

71. Preliminary damage inspections of the Barge were permitted by the USCG after 3 December 2017.

72. On 7 December 2017, investigators discovered two (2) through cracks in the bulkhead separating the forepeak void space and No. 1 Cargo Tank.

73. On 13 February 2018, USCG and NTSB Investigators cut and removed a three (3) foot by four (4) foot bulkhead coupon ("Coupon") for further examination and testing at the NTSB Materials Laboratory.

74. Removal of the Coupon was necessary to comply with orders from the governmental authorities in furtherance of the Investigation.

75. The Investigation, including removal of the Coupon, was also essential for evaluating the fatality and injury claims of the Barge's Bouchard crew members.

76. Any and all Bouchard crew member claims are covered by U.K. Mutual in favor of Bouchard.

77. Bouchard crew member claims include the two (2) fatality claims and various injury claims associated with the Incident, all of which are covered by U.K. Mutual in favor of Bouchard.

78. The amounts paid, or to be paid, to the Bouchard crew-member claimants injured and killed in the Incident are required to calculate the *pro rata* allocation between Hull Underwriters and U.K. Mutual.

79. To date, U.K. Mutual has refused to provide all details establishing the amounts paid, or to be paid, to the injury and death Bouchard crew-member claimants, despite due demand.

80. After the Coupon was removed, a NTSB Materials Laboratory confirmed the cracks, corrosion and wastage on the Coupon.

81. Permanent repairs to the Barge were considered, but never performed.

82. In early April 2018, Bouchard decided to not repair the Barge and to, instead, scrap it.

83. On 9 April 2018, Bouchard submitted its written scrapping proposal to Hull Underwriters in lieu of undertaking permanent repair.

84. Thereafter, the Barge was moved from Mississippi to Tampa, Florida for pre-scrap cleaning and was subsequently transported to New Orleans, Louisiana, where it was scrapped in early August 2018.

*Common Charges*

85. In August 2018, Simon Knowles ("Knowles") – the Adjuster nominated by Bouchard – issued an adjustment and claim summary.

86. Knowles determined that (i) all tank-cleaning charges (i.e., equipment rental and usage, chemists, inspections, consulting services, waste and residue disposal, labor, etc.); and (ii) all incidental port charges (i.e., transportation services, storage, shifting, berthing dues and services, equipment rental and usage, line handling, labor, etc.) from 1 November 2017 (the date the Barge was transported to Gulf Copper's Harbor Island repair yard) through 13 February 2018 (the date of the removal of the Coupon at the direction of the USCG and NTSB)

were common to the distinct insurance coverages provide by Hull Underwriters and U.K. Mutual.

87. Throughout this Complaint, Hull Underwriters refer to the charges listed in Paragraph 86 as "Common Charges."

88. All Common Charges were necessarily incurred to determine the condition of the Barge and to comply with all outstanding directives from the governmental bodies conducting the Investigation.

89. In total, Plaintiffs paid $1,419,939.62 toward the Common Charges.

90. U.K. Mutual failed to pay any of the Common Charges, despite due demand.

## FIRST CAUSE OF ACTION – EQUITABLE CONTRIBUTION

91. Paragraphs 1 through 90 are incorporated by reference as though fully set forth at length herein.

92. Pursuant to the Hull Policy, Hull Underwriters provided insurance coverage for the Hull Risk associated with Bouchard's ownership and operation of the Barge.

93. Pursuant to its agreement with Bouchard, U.K. Mutual provides insurance coverage for the Injury-and-Death Risk associated with Bouchard's ownership and operation of the Barge.

94. The Hull Risk underwritten by Hull Underwriters and the Injury-and-Death Risk underwritten by U.K. Mutual are distinct and do not overlap.

95. Accordingly, Hull Underwriters and U.K. Mutual are concurrent primary insurers.

96. The Incident was a common occurrence, for which both Hull Underwriters and U.K. Mutual obligated to respond pursuant to the terms of the respective insurance coverages they provided to Bouchard.

97. The Common Charges incurred on account of the Incident were independently covered by both the Hull Policy and insurance coverage U.K. Mutual provided Bouchard.

98. Plaintiffs paid all $1,419,939.62 of the Common Charges.

99. U.K. Mutual failed to contribute its *pro rata* share of the Common Charges.

100. As a direct and proximate result of U.K. Mutual's failure to pay its *pro rata* share of the Common Charges, Hull Underwriters suffered damages in the amount of U.K. Mutual's proportionate *pro rata* share of the $1,419,939.62 in Common Charges.

101. By virtue of the foregoing premises, Hull Underwriters are entitled to equitable contribution from U.K. Mutual for its *pro rata* share of the $1,419,939.62 in Common Charges.

WHEREFORE, Hull Underwriters demand judgment in their favor and against U.K. Mutual for (1) its *pro rata* share of the $1,419,939.62 in Common Charges, calculated by reference to all sums U.K. Mutual **has paid** the Bouchard crew members injured in the Incident or estates of Bouchard crew members killed in the Incident as of the date judgment issues, (2) interest on said *pro rata* share, (3) costs and disbursements of this action, and (4) such other and further relief as this Court may deem just and proper.

SECOND CAUSE OF ACTION – DECLARATORY JUDGMENT – RULE 4:42-3

102. Paragraphs 1 through 101 are incorporated by reference as though fully set forth at length herein.

103. Pursuant to the Hull Policy, Hull Underwriters provided insurance coverage for the Hull Risk associated with Bouchard's ownership and operation of the Barge.

104. Pursuant to its agreement with Bouchard, U.K. Mutual provides insurance coverage for the Injury-and-Death Risk associated with Bouchard's ownership and operation of the Barge.

105. The Hull Risk underwritten by Hull Underwriters and the Injury-and-Death Risk underwritten by U.K. Mutual are distinct and do not overlap.

106. Accordingly, Hull Underwriters and U.K. Mutual are concurrent primary insurers.

107. The Incident was a common occurrence, for which both Hull Underwriters and U.K. Mutual obligated to respond pursuant to the terms of the respective insurance coverages they provided to Bouchard.

108. The Common Charges incurred on account of the Incident were independently covered by both the Hull Policy and insurance coverage U.K. Mutual provided Bouchard.

109. Plaintiffs paid all $1,419,939.62 of the Common Charges.

110. U.K. Mutual failed to contribute its *pro rata* share of the Common Charges.

111. To date, certain injury claims asserted by Bouchard crew members injured in the Incident and death claims asserted by the estates of Bouchard crew members killed in the Incident have not been settled and paid by U.K. Mutual.

112. To the extent the claims referenced in Paragraph 111 are not settled and paid by U.K. Mutual by the time a judgment issues in this matter, U.K. Mutual's full *pro rata* share of the Common Charges will not be determinable.

113. Accordingly, an appropriate formula – calculated by reference to all sums U.K. Mutual **will have to pay** for claims made by the Bouchard crew members injured in the Incident or estates of Bouchard crew members killed in the Incident once those claims are settled

and paid – must be declared, so that the Parties may determine the balance of U.K. Mutual's full *pro rata* share of the Common Charges after those claims are settled and paid by U.K. Mutual.

WHEREFORE, Hull Underwriters demand a judgment in their favor and against U.K. Mutual declaring an appropriate formula to determine the balance of U.K. Mutual's *pro rata* share of the $1,419,939.62 in Common Charges, calculated by reference to all sums U.K. Mutual **will have to pay** for claims made by the Bouchard crew members injured in the Incident or estates of Bouchard crew members killed in the Incident once those claims are settled and paid by U.K. Mutual, plus interest on said balance and such other and further relief as this Court may deem just and proper.

### THIRD CAUSE OF ACTION – UNJUST ENRICHMENT

114. Paragraphs 1 through 113 are incorporated by reference as though fully set forth at length herein.

115. U.K. Mutual was obligated, separately and independently, to pay for the Common Charges under the terms of the insurance coverage it provided Bouchard.

116. The payment of the Common Charges was necessary for U.K. Mutual to investigate the Incident and settle or negotiate the settlement of the claims asserted by Bouchard crew members injured in the Incident or asserted by the estates of Bouchard crew members killed in the Incident.

117. Hull Underwriters paid one hundred percent (100%) of the Common Charges with the intention of seeking payment from U.K. Mutual of its *pro rata* share of the Common Charges.

118. By paying one hundred percent (100%) of the Common Charges, Hull Underwriters conferred a substantial monetary benefit on U.K. Mutual.

119. U.K. Mutual accepted the benefit conferred on it by Hull Underwriters.

120. U.K. Mutual paid nothing for the benefit Hull Underwriters conferred on it.

121. If U.K. Mutual was allowed to retain the benefit Hull Underwriters conferred, it would be unjust and U.K. Mutual would be inequitably enriched by receiving substantial monetary benefits from Hull Underwriters and retaining those benefits without full repayment.

122. WHEREFORE, Hull Underwriters demand judgment in their favor and against U.K. Mutual for (1) its *pro rata* share of the $1,419,939.62 in Common Charges, calculated by reference to all sums U.K. Mutual **has paid or will have to pay** the Bouchard crew members injured in the Incident or estates of Bouchard crew members killed in the Incident, (2) interest on said *pro rata* share, (3) costs and disbursements of this action, and (4) such other and further relief as this Court may deem just and proper.

### JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: New York, New York
December /0 2020

KENNEDY LILLIS SCHMIDT & ENGLISH
*Attorneys for Plaintiffs*

By: _____
John T. Lillis, Jr.
75 Maiden Lane, Suite 402
New York, New York 10038
Telephone (212) 430-0800

## DECLARATION OF TRIAL COUNSEL

Pursuant to the provision of Rule 4:25-4, the Court is advised that John T. Lillis, Jr., Esq. is hereby designated as trial counsel for Plaintiffs.

Dated: New York, New York
December 10, 2020

KENNEDY LILLIS SCHMIDT & ENGLISH
*Attorneys for Plaintiffs*

By: _____
John T. Lillis, Jr.
75 Maiden Lane, Suite 402
New York, New York 10038
Telephone (212) 430-0800

## CERTIFICATION OF NO OTHER ACTIONS

I, John T. Lillis, Jr., Esq., hereby certify that the dispute detailed herein is not the subject of any other action pending in any other court or a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this complaint, I know of no other parties that should be made a part of this lawsuit. In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

Dated: New York, New York  
December 10, 2020

KENNEDY LILLIS SCHMIDT & ENGLISH  
*Attorneys for Plaintiffs*

By: /s/ John T. Lillis  
John T. Lillis, Jr.  
75 Maiden Lane, Suite 402  
New York, New York 10038  
Telephone (212) 430-0800

# Civil Case Information Statement

## Case Details: HUDSON | Civil Part Docket# L-004552-20

**Case Caption:** TRAVELERS PROPERTY C ASUALTY C VS THE UNITED KIN
**Case Initiation Date:** 12/10/2020
**Attorney Name:** JOHN T LILLIS JR
**Firm Name:** KENNEDY LILLIS SCHMIDT & ENGLISH
**Address:** 75 MAIDEN LANE STE 402
NEW YORK NY 100384816
**Phone:** 2124300800
**Name of Party:** PLAINTIFF : Travelers Property Casualty Co
**Name of Defendant's Primary Insurance Company (if known):** Travelers

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 12 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Travelers Property Casualty Co?** NO

**Are sexual abuse claims alleged by: Lloyd's Syndicate 2003 for the?** NO

**Are sexual abuse claims alleged by: Swiss Re International SE - UK?** NO

**Are sexual abuse claims alleged by: Starr Indemnity & Liability Co?** NO

**Are sexual abuse claims alleged by: Atlantic Specialty Insurance ?** NO

**Are sexual abuse claims alleged by: AmTrust Lloyd's Syndicate 9577?** NO

**Are sexual abuse claims alleged by: The Continental Insurance Co?** NO

**Are sexual abuse claims alleged by: Navigators Insurance Company?** NO

**Are sexual abuse claims alleged by: RiverStone Syndicate 1897?** NO

**Are sexual abuse claims alleged by: XL Specialty Insurance Company?** NO

**Are sexual abuse claims alleged by: United States Fire Insurance?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

| | |
|---|---|
| 12/10/2020 | /s/ JOHN T LILLIS JR |
| Dated | Signed |